(No. 37558.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM JAMES HORTON, Plaintiff in Error.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

BAKER, McKENZIE & HIGHTOWER, of Chicago, (FRANCIS D. MORRISSEY and CARL KUSTIN, of counsel,) appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. NELLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, William James Horton, was found guilty of robbery after a bench trial in the criminal court of Cook County, and was sentenced to the penitentiary for a term of not less than 2 nor more than 10 years. On this

writ of error he contends (1) that the evidence did not establish his guilt beyond a reasonable doubt; (2) that he was prejudiced by the bias of the trial judge against alibi evidence, and (3) that his appointed counsel was incompetent.

Joseph Lyle, a taxicab driver, testified that about 1:15 A.M. on June 27, 1961, two men entered his cab. He watched them as they walked toward the cab from about 10 feet away and as they entered the cab. One man, whom he identified as the defendant, entered on the right side. The other man, whom Lyle described but who had not been apprehended, walked around the rear of the cab and entered on the left side. When Lyle had driven the men to the destination they indicated, the unidentified man put a pistol against his neck, and took $11 from his shirt pocket and a wallet from his pants pocket. The defendant reached over and took $2 in change from another shirt pocket and removed Lyle's watch from his wrist.

After the men left his cab, Lyle drove for about five minutes until he found a police squad car and reported the robbery. He described the robbers and their clothing, and also described the watch that had been taken from him. He cruised the vicinity with the officers, and about 1:45 A.M., he pointed out the defendant and Frederick Swan, who were walking on Roosevelt Road, about two blocks from the scene of the robbery, and six or seven blocks from where the two men had entered the cab.

The officers arrested the two men, but released Swan when Lyle said that he was not one of the robbers. Lyle identified the wrist watch worn by the defendant as the watch that the defendant had taken from him. The watch was a "Helbros Invincible," with a black band. Both Lyle and one of the officers testified that Lyle had so described the watch to the officers before the defendant was arrested. They also testified that the defendant identified the watch as a "Saga." The defendant testified that the watch was

his own, and that at the time of his arrest he had identified it as a "Helbros.".

The defendant testified further that he had left his aunt's home, where he had been visiting, at 1:00 to 1:15 A.M., and that he then met Frederick Swan and Freddie May Fitzpatrick. The three went to a nearby park and drank beer. The two men left the park for more beer, and they were stopped by the police on their way back to the park.

Both Swan and Miss Fitzpatrick testified that they had met the defendant on the street and were drinking with him in the park, and that Swan had gone with the defendant for more beer when the two men were arrested. Both of these witnesses were uncertain as to when they met the defendant and how long they had been with him before he was arrested. The defendant's wife identified the watch as the defendant's on the basis of what she said was green paint on the strap. The defendant, however, testified that while at one time there had been blue and orange paint on the strap of his watch, there was none on it at the time of his arrest. The trial judge examined the watch, and found no paint on the strap. It was stipulated that if the four persons named by the defendant as having been present with him at his aunt's home until he left at 1:10 to 1:15 A.M. were called as witnesses, they would testify that the defendant visited them occasionally but that they did not remember whether he had visited them on the night in question.

Upon this record the trial judge did not err in concluding that the defendant's guilt was established beyond a reasonable doubt. The victim had supplied the officers with a description of the men who had robbed him and of the watch they had taken from him before the defendant and Swan were stopped by the police. The defendant's appearance, and particularly his clothing, matched that description. In addition to the victim's identification

of the watch by its brand name, his further description of a rattle inside the case when the watch was shaken was verified by a police officer. The persons with whom the defendant said he had spent the evening until about 1:15 A.M., did not support his alibi. And the seeming willingness of the witnesses Swan and Miss Fitzpatrick, who admitted they were guessing as to time and time intervals, to stretch the length of time they had been with the defendant did not enhance their credibility.

It is this aspect of their testimony that prompted the remarks of the trial judge to which the defendant objects. In the course of summing up the testimony, the judge pointed out certain inconsistencies in the testimony of the witnesses· for the defense, and said: "So the alibi testimony doesn't convince the court at all. Alibi witnesses are worth $2 a dozen anyway. Anybody can prove an alibi if you've got some friends and relatives that want to come in and swear." He went on to say that he did not doubt that Swan and Miss Fitzpatrick were with the defendant that evening, but that he felt they had been so willing to stretch the time they were with him that they cast doubt upon the defendant's own testimony as to his movements. Considered in context we do not find in these remarks the general predisposition and prejudice against alibi witnesses of which the defendant complains.

Finally, the defendant contends that his appointed trial counsel was incompetent because he failed to put before the trial court Lyle's testimony at the preliminary hearing, which, the defendant asserts, contradicts his testimony at the trial. We have examined the excerpt from the testimony at the preliminary hearing upon which the defendant relies, and we do not find that there is any necessary inconsistency between Lyle's testimony there and his testimony at the trial.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*